FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8:49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Welfare of:<br><br>N.A., 10/23/08 | No. 43048-7-II<br><br>Consolidated with: |
| In re the Welfare of:<br><br>Z.B., 02/18/07 | No. 43058-4-II<br><br>UNPUBLISHED OPINION |

JOHANSON, A.C.J. — E.A. appeals the trial court's termination of her parental rights. She correctly argues that insufficient evidence supports the trial court's finding that continuation of her parent-child relationship interferes with N.A. and Z.B.'s early integration into a stable and permanent home. Accordingly, we reverse.

## FACTS

E.A. is the mother of Z.B and N.A. Both children were placed in foster care in 2010 and found dependent on the State on June 14, 2010. As the assigned social worker, Ashley Mangum was responsible for finding a placement for the children and setting up services for the parents. The trial court held permanency hearings to decide placement for the children in December 2010 and November 2011. Mangum asked E.A. to refer to her any relatives who might be a placement

resource for the children. E.A. failed to successfully complete the court-ordered services, except she did complete a 28-day inpatient drug treatment program at Sea-Mar.

E.A.'s termination trial began in January 2012, while Mangum was still searching for a permanent placement for the children. At the time, Mangum was considering permanent placement with either E.A.'s aunt or the girls' current foster parents. Mangum testified that it would be best for the children to be adopted because the girls had been in foster care for 20 months and had bonded together. She explained that E.A.'s lack of stability and emotion control and inability to make good decisions would not make her a safe parent for the girls.

But, Mangum did not think the girls were prepared for E.A.'s rights to be terminated. Mangum explained that E.A. had consistently shown up for visits, and the girls seemed bonded with E.A, recognized E.A. as their mother, sought her attention, responded to her, and looked forward to her visits. Mangum recommended continued hands-on parenting programs and also explained that she had investigated E.A.'s maternal grandmother as a placement, and was still in the process of gathering background information about E.A.'s aunt.

At trial, parenting coach LaShanda Green testified that E.A. engaged with the girls at an appropriate level for their age and she did not have safety concerns, but that E.A. was unable to control her anger at times and was very reactionary. E.A.'s mother testified to her belief that E.A. took good care of the girls. Last, the guardian ad litem testified that it would be in the children's best interest to terminate E.A.'s parental rights because the girls had already been dependent for 21 months.

During closing arguments, the State argued:

> Continuation of the parent/child relationship. The girls are placed together. They're in a home that is willing to adopt them. There's also some relatives that have come forward. Ms. Mangum has testified that those relatives who did come forward she's looked into. Right now there isn't a viable relative, that perhaps Ms. Carter might pan out, I don't know. But clearly, the parent/child relationship prevents [Z.B.] and [N.A.] from moving forward and being integrated into their home.

3 Verbatim Transcript of Proceedings (VTP) at 277. In response, E.A. argued that it was too early to grant the request to terminate parental rights, that she had engaged in some services and was willing to complete them, and that the State had not fully explored relative placement options.

The court terminated E.A.'s rights, specifically finding E.A. to be an unfit parent for N.A. and Z.B. Orally, the court found that the State satisfied factors "(d)" and "(e)" of RCW 13.34.180(1)[1] but it did not address factor "(f)." The court entered a written finding that "continuance of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." Clerk's Papers (CP) at 74. The court was especially concerned that E.A. did not take parenting feedback well, that she was mean, and that she had issues controlling anger. The court then found that because E.A. did not make progress in the 12 months prior, it saw little likelihood that she would learn how to parent in a timely manner. E.A. appeals.

## ANALYSIS

E.A. appeals the trial court's order terminating her parental rights, arguing that the court erred because the State did not prove that continuation of her parental relationship would

---

[1] The trial court did not expressly reference this statute by number, but it is apparent from the record.

diminish her children's prospects for early integration into a permanent and stable home. She argues that there is no evidence that E.A.'s relationship with her daughters would interfere with their stability because (1) E.A. has consistently visited her daughters and the girls look forward to the visits, (2) Mangum was still investigating placements for the girls, and (3) the girls are not prepared for the separation.

The State responds, relying on *In re Dependency of J.C.*, to argue that DSHS did not have to demonstrate that a relationship with E.A. will diminish the girls' prospects of early integration into a stable home because it adequately demonstrated that there is little likelihood that conditions can be remedied so the children can return to the parent in the foreseeable future. 130 Wn.2d 418, 427, 924 P.2d 21 (1996). The State asserts that when E.A. failed to appeal the finding that there is little likelihood that conditions will be remedied in the future, she conceded this fact. *In re Dependency of K.D.S.* tells us that E.A. is correct. *K.D.S.*, ___ Wn.2d ____, 294 P.3d 695 (2013).

### A. Standard of Review

Parents have a fundamental liberty interest in the custody and care of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522 (2011). "The legislature has prescribed a statutory scheme that balances the parents' liberty interest with the child's right to a safe and healthy environment." *K.D.S.*, 294 P.3d at 699 (citing *In re Welfare of A.B.*, 168 Wn.2d 908, 919, 232 P.3d 1104 (2010)). In order for the State to terminate parental rights, it must prove

the six elements in RCW 13.34.180 by clear, cogent, and convincing evidence. *In re Welfare of C.S.*, 168 Wn.2d 51, 55, 225 P.3d 953 (2010); RCW 13.34.180(1) and RCW 13.34.190(1)(a)(i).

Evidence is clear, cogent, and convincing when the evidence shows that the fact in issue is highly probable. *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). The court must then find by a preponderance of the evidence that termination is in the child's best interest. *K.N.J.*, 171 Wn.2d at 576-77; RCW 13.34.190(1)(b). On appeal, deference is given to the trial court that had the benefit of having the witnesses before it. *In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). The trial court's findings must not be disturbed "unless clear, cogent, and convincing evidence does not exist in the record." *K.R.*, 128 Wn.2d at 144.

## B. Sufficiency of Evidence

The State must prove the following six factors to terminate parental rights: (a) the child is dependent, (b) the court has entered a dispositional order, (c) the child has been removed from the parent's custody for at least six months pursuant to a dependency finding, (d) all necessary services which could correct the parental deficiencies have been offered, (e) there is little likelihood that the parental condition can be remedied in the near future, and (f) continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. RCW 13.34.180 (1)(a)-(f).

The State's sole argument is that if it satisfied its burden of proving RCW 13.32.180(1)(e), it necessarily had proved RCW 13.34.180(1)(f). This argument was recently rejected by our Supreme Court.

In *K.D.S.*, the Supreme Court explained that the State must prove each element of RCW 13.34.180(1) before a trial court may terminate parental rights under RCW 13.34.190(1)(a)(i). *K.D.S.*, 294 P.3d at 701. The court based its decision in part on *In re K.S.C.*, decided three years after *J.C.*, where, although RCW 13.34.180(1)(e) was satisfied, it nonetheless analyzed whether the State had proved the allegation codified in RCW 13.34.180(1)(f). *K.S.C.*, 137 Wn.2d 918, 928, 976 P.2d 113 (1999); *K.D.S.*, 294 P.3d at 701. The Supreme Court reasoned that if a finding under RCW 13.34.180(1)(f) necessarily followed from a finding under RCW 13.34.180(1)(e), they would not have needed to review this issue. *K.D.S.*, 294 P.3d at 701.

The Supreme Court also noted that facts supporting a conclusion under RCW 13.34.180(1)(e) may, but do not necessarily, support a conclusion under RCW 13.34.180(1)(f). In *J.C.*, for example, the fact that the mother was unlikely to change behaviors that had psychologically destabilizing effects on her children also supported a determination that continuation of their relationship clearly diminished the likelihood that the children would be emotionally and psychologically prepared to integrate into a stable and permanent home if and when one became available. But the existence of overlapping facts does not relieve the State of its burden of proving RCW 13.34.180(1)(f) independently of RCW 13.34.180(1)(e). And where facts do not overlap, little reason exists to tie a finding under RCW 13.34.180(1)(f) to a finding under RCW 13.34.180(1)(e). *K.D.S.*, 294 P.3d at 701.

The Supreme Court in *K.D.S.* also recognized that treating the two factors individually also comports with the rules of statutory construction: "'[I]t is a fundamental principle of statutory construction that courts must not construe statutes so as to nullify, void or render

meaningless or superfluous any section or words' of the statute." K.D.S., 294 P.3d at 701 (quoting *Taylor v. City of Redmond*, 89 Wn.2d 315, 319, 571 P.2d 1388 (1977)). Accepting the State's interpretation of *J.C.* renders RCW 13.34.180(1)(f) superfluous because, under its view, no showing needs to be made to prove RCW 13.34.180(1)(f) as long as RCW 13.34.180(1)(e) is proved. *K.D.S.*, 294 P.3d at 701.

The Supreme Court in *K.D.S.* held that the State must independently prove each element in RCW 13.34.180(1) before a trial court may order the termination of parental rights under RCW 13.34.190(1)(a)(i). Evidence may support more than one element found within RCW 13.34.180(1). But proof of the element codified in RCW 13.34.180(1)(e) does not necessarily prove the element codified in RCW 13.34.180(1)(f). To terminate parental rights, the trial court must find that the State has proved each of the six statutory elements. *K.D.S.*, 294 P.3d at 701.

Here, the State does not attempt to argue that there are sufficient facts to uphold the trial court's finding that continuation of the parent-child relationship interferes with an early integration into a stable and permanent home. Instead, the State argues that it does not need to prove factor (f) if they proved factor (e). In light of *K.D.S.*, the State's argument fails.

We turn then to whether sufficient facts support factor (f). We conclude that the State failed to prove by clear, cogent, and convincing evidence that maintaining a relationship with E.A. would be detrimental to N.A. and Z.B.'s early integration into a stable and permanent home. There is very little evidence in the record describing E.A.'s relationship with her children. The testimony that exists supports a conclusion that the parent-child relationship was strong, and not harmful in any way. Social worker Mangum testified that she did not think the girls were

No. 43048-7-II/
No. 43058-4-II

prepared for E.A.'s rights to be terminated. Mangum explained that E.A. had consistently showed up for the visits and the girls seemed bonded with E.A, recognized E.A. as their mother, sought her attention, responded to her, and looked forward to her visits. In contrast, there was no testimony that the children had a detrimental relationship with E.A. or that continuation of the parent-child relationship would interfere with their early integration into a stable and permanent home. Accordingly, insufficient evidence supports the trial court's finding that continuation of the parent-child relationship interferes with the children's early integration into a permanent and stable home.

Reversed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Hunt, J.

Bjorgen, J.

8